ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **WILLIAM PELLOT RODRÍGUEZ**<br>QUERELLANTE(S)-RECURRIDA(S)<br><br><br>V.<br><br><br>**GIUSEPPE PANDOLFI DE RINALDIS**<br>QUERELLADA(S)-RECURRENTE(S)<br><br>**VITÍN GAS CP / VÍCTOR GÓMEZ RIVERA**<br>QUERELLADA(S) | **KLRA202400386** | *REVISIÓN DE DECISIÓN ADMINISTRATIVA* procedente del Negociado de Transporte y Otros Servicios Públicos (NSTP)<br><br>Caso Núm.:<br>**OCD-2024-001**<br><br><br>Sobre:<br>Remedio Administrativo |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente.

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 26 de marzo de 2026.

Comparece ante este Tribunal de Apelaciones, el señor **GIUSEPPE PANDOLFI DE RINALDIS** (señor **PANDOLFI DE RINALDIS**) mediante una *Revisión* instada el 19 de julio de 2024. En su recurso, nos solicita que revisemos la *Resolución y Orden* concretada el 22 de mayo de 2024 por el **NEGOCIADO DE TRANSPORTE Y OTROS SERVICIOS PÚBLICOS (NTSP)**.[1] Mediante esta decisión administrativa, se declaró, *inter alia*, ha lugar la *Querella* entablada el 26 de noviembre de 2019 por el señor **WILLIAM PELLOT RODRÍGUEZ** (señor **PELLOT RODRÍGUEZ**); se dejó sin efecto la audiencia pautada para el 23 de mayo de 2024; y se le ordenó a **VITÍN GAS CP** (**VITÍN GAS**) contratar inmediatamente, a su costo, a un concesionario autorizado por el **NTSP** para la remoción del

---

[1] Este dictamen administrativo fue notificado y archivado en autos el 22 de mayo de 2024. Apéndice de la *Revisión,* págs. 138-169.

Número Identificador:
SEN2026_____

cilindro de gas y su reinstalación en otro lugar de la residencia que cumpla con los requisitos reglamentarios; y se le impuso a **VITÍN GAS** una multa administrativa de $500.00 a satisfacer dentro del plazo de treinta (30) días.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El 26 de noviembre de 2019, el señor **PELLOT RODRÍGUEZ** instó la *Querella,* número QT-2020-01559, en la cual solicitó una investigación y relocalización de un cilindro de gas.[2]

Pasado algún tiempo, el 1 de febrero de 2022, la inspectora **NYRIA SOLÍS CORPS** (inspectora **SOLÍS CORPS**) y el director **SAMUEL RODRÍGUEZ SERRANO** (señor **RODRÍGUEZ SERRANO**), ambos adscritos a la Oficina Regional Este, firmaron un *Informe Investigación de Querella* (*Informe*) recomendando el archivo de la *Querella* por no haber encontrado ninguna violación ni peligro alguno sobre la instalación del cilindro de gas conforme a las disposiciones del **NATIONAL FIRE PROTECTION ASSOCIATION (NFPA)**.[3] El 9 de febrero de 2022, el **NTSP** expidió *Notificación* en la cual concedió un término de veinte (20) días para contestar la *Querella.*[4] A los pocos días, el 21 de febrero de 2022, el señor **PANDOLFI DE RINALDIS** presentó su *Respuesta a Querella* en la cual pidió la desestimación de la *Querella* en consideración al *Informe* rendido el 1 de febrero de 2021.[5]

Luego de varios trámites administrativos, el 18 de enero de 2024, la inspectora **SOLÍS CORPS**, el Inspector Luis Carrasquillo Rexach y el señor **RODRÍGUEZ SERRANO** suscribieron un segundo *Informe Investigación de Querella.*[6] En este segundo *Informe,* se aprestó que **VITÍN GAS** había entregado la certificación de la instalación de gas y el cilindro o tanque de

---

[2] Apéndice de la *Revisión*, págs. 1-6.
[3] National Fire Protection Association 58, Código del Gas Licuado del Petróleo, Edición 2020. Apéndice de la *Revisión*, págs. 10-13.
[4] *Íd.*, pág. 9.
[5] *Íd.*, págs. 14-15.
[6] *Íd.*, págs. 16-21.

gas estaba localizado en un lugar abierto donde no representaba peligro alguno según las normativas del **NFPA**.

Después, el 30 de enero de 2024, la inspectora **SOLÍS CORPS** y el señor **RODRÍGUEZ SERRANO** refrendaron un tercer *Informe Investigación de Querella*.[7] A diferencia de los informes anteriores, en este se expuso que el 29 de enero de 2024, se visitó la residencia del señor **PANDOLFI DE RINALDIS** para medir las distancias de la instalación y se tomaron fotografías.

El 2 de febrero de 2024, el **NTSP** dictó una *Orden de Cese y Desista* en la cual le requirió a **VITÍN GAS** abstenerse de ofrecer servicios relacionados a distribución de accesorios y equipos relacionados al almacenamiento y uso de gas licuado de petróleo, así como construcción de instalaciones residenciales, comerciales e industriales sin tener autorización previa de **NTSP** y, además, se le exigió acreditar en el término de tres (3) días que acudió a remover el cilindro de gas y/o el mismo fue reubicado en otro lugar de la residencia.[8] A su vez, se pautó audiencia pública para el 21 de febrero de 2024, con el fin de que el señor **PANDOLFI DE RINALDIS** mostrara causa por la cual la *Orden* no debía ser carácter permanente.

El día de la audiencia, las partes informaron haber llegado a un acuerdo para llevar a cabo una inspección ocular. La misma fue llevada a cabo el 29 de febrero de 2024 y estuvieron presentes la inspectora **SOLÍS CORPS**, el inspector Erich J. Colón Berdecía, el señor **ÁNGEL CRESPO** (perito del señor **PELLOT RODRÍGUEZ**), entre otros. El 16 de abril de 2024, la Oficina de Abogados del Interés Público (OAIP) del **NTSP** presentó una *Moción Sometiendo Informe de Investigación de Querella* acompañada del *Informe Investigación de Querella* rendida el 15 de abril de 2024.[9] En tales circunstancias, el 18 de abril de 2024, la Oficina de Abogados del Interés Público (**OAIP**) presentó una *Moción en Solicitud de Resolución Sumaria* en la cual se peticionó que procediera a dictar Resolución Sumaria declarando

---

[7] Apéndice de la *Revisión*, págs. 22-28.
[8] *Íd.*, págs. 29-44.
[9] *Íd.*, págs. 100-108.

ha lugar la *Orden de Cese y Desista*.[10] Al día siguiente, 19 de abril de 2024, se dictaminó *Orden Administrativa* concediendo a las partes un término de quince (15) días para someter por escrito su posición sobre la *Moción en Solicitud de Resolución Sumaria*.[11]

El 24 de abril de 2024, el señor **PANDOLFI DE RINALDIS** presentó su *Oposición a Moción Solicitando Resolución Sumaria y Solicitud de Resolución Sumaria a Favor del Querellado*.[12] Replicó que los inspectores tendrían que testificar sobre las medidas y como se llevaron a cabo; y se imputan violaciones del Manual Núm. 58 del año 2020 del **NFPA**, cuando este no constaba en evidencia o en el récord del caso. Sostuvo que la instalación fue realizada en el 2019 y la OAIP pretende sancionar por violaciones a un manual que no existía al momento en que se instaló el cilindro.

A continuación, el 1 de mayo de 2024, el señor **PELLOT RODRÍGUEZ** presentó *Moción en Cumplimiento de Orden y Solicitud para que se Dicte Resolución Sumaria a Favor del Querellante*.[13] En principio, propuso que las disposiciones del Manual Núm. 58 del año 2020 del **NFPA** eran iguales a las de la edición que estaba vigente al momento de la instalación del cilindro de gas (2017) y suplicó que se le ordenara al señor **PANDOLFI DE RINALDIS** reubicar el cilindro de gas y su tubería hacia otra área de su propiedad que no colinde con su residencia.

Más tarde, el 6 de mayo de 2024, el señor **PANDOLFI DE RINALDIS** presentó una *Oposición a Moción Solicitando Resolución Sumaria del Querellante y Solicitud de Resolución Sumaria a Favor del Querellado*.[14] Resaltó que procedía la desestimación de la *Querella* o, en la alternativa, que se proveyera una vista evidenciaria.

Bajo estas condiciones, el 22 de mayo de 2024, el **NTSP** dictó la *Resolución y Orden* recurrida. En desacuerdo, el 6 de junio de 2024, el señor

---

[10] Apéndice de la *Revisión*, págs. 109-116.
[11] *Íd.*, págs. 117-119.
[12] *Íd.*, págs. 120-124.
[13] Apéndice de la *Revisión*, págs. 127-137.
[14] *Íd.*, págs. 170-173.

**PANDOLFI DE RINALDIS** presentó *Moción de Reconsideración o Relevo*, la cual no fue adjudicada por el **NTSP**.[15]

Insatisfecho, el 19 de julio de 2024, el señor **PANDOLFI DE RINALDIS** acudió ante este tribunal revisor mediante una *Revisión.* En la misma, señala el(los) siguiente(s) error(es):

> Erró el NTSP al determinar que las partes habían estipulado las medidas tomadas el día 29 de febrero de 2024 y no ver la vista evidenciaria.
>
> Erró el NTSP al interpretar sus leyes y reglamentos de tal forma de dar [h]a lugar a la querella del Recurrido.
>
> Erró el NTSP al no conceder la solicitud de reconsideración en vista de los argumentos y declaraciones juradas sobre presiones indebidas en el caso.

El 1 de agosto 2024, el señor **PELLOT RODRÍGUEZ** presentó su *Alegato del Recurrido-Solicitud de Desestimación*. El 19 de agosto de 2024, se pronunció *Resolución* concediéndole un plazo perentorio de quince (15) días al señor **PANDOLFI DE RINALDIS** para exponer su posición sobre la solicitud de desestimación. De este modo, el 3 de septiembre de 2024, el señor **PANDOLFI DE RINALDIS** presentó *Moción en Cumplimiento de Orden y Oposición a Moción de Desestimación por Falta de Jurisdicción.* El 16 de septiembre de 2024, se dictaminó *Resolución* declarando no ha lugar la petitoria de desestimación.

En desacuerdo, el 24 de septiembre de 2024, el señor **PELLOT RODRÍGUEZ** presentó *Solicitud de Reconsideración de Resolución Declarando No Ha Lugar la Solicitud de Desestimación Sometida por el Recurrido*. El 25 de septiembre de 2024, se decretó *Resolución* concediéndole un plazo perentorio de quince (15) días para exponer su posición sobre la solicitud de reconsideración al señor **PANDOLFI DE RINALDIS** y a la **OAIP**.

Posteriormente, el 4 de octubre de 2024, el señor **PANDOLFI DE RINALDIS** presentó *Moción en Cumplimiento de Orden y Oposición a Moción de Reconsideración a Desestimación por Falta de Jurisdicción*. Cuestionó que,

---

[15] Apéndice de la *Revisión*, págs. 174-186.

ante la agencia, las partes eran el señor **PELLOT RODRÍGUEZ** como querellante y el señor **PANDOLFI DE RINALDIS** como querellado y la **OAIP** no podía ser catalogada como parte y juzgador al mismo tiempo. En cambio, el 9 de octubre de 2024, el **NTSP,** por conducto de la Oficina del Procurador General de Puerto Rico, presentó *Escrito en Cumplimiento de Resolución*. Sustentó que la **OAIP** participó activamente del procedimiento administrativo y, en consecuencia, el señor **PANDOLFI DE RINALDIS** debió haberle notificado su recurso a la **OAIP**. En respuesta, el 15 de octubre de 2024, el señor **PANDOLFI DE RINALDIS** presentó *Moción sobre Escrito del NTSP sobre la Jurisdicción de esta Honorable Curia* en la cual reiteró que la **OAIP** no era parte en el caso.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de todas las partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A - *REVISIÓN ADMINISTRATIVA*

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[16] Su sección 4.1 instituye la *revisión judicial* de las determinaciones finales de las agencias por este Tribunal de Apelaciones.[17]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[18] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la *razonabilidad* de la actuación de la agencia.[19] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a

---

[16] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).

[17] 3 LPRA § 9671.

[18] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004).

[19] *Otero v. Toyota*, 163 DPR 716 (2005).

determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[20]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[21] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[22] Ello implica que los dictámenes de los entes administrativos merecen deferencia judicial.[23]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[24] Particularmente, concretó las normas básicas sobre el alcance de la *revisión judicial* al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la

---

[20] *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009).
[21] *Torres Rivera v. Policía de PR,* 196 DPR 606, 625- 626 (2016)*; García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891 (2008).
[22] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).
[23] *DACo v. Toys "R" Us*, 191 DPR 760, 765 (2014).
[24] *Torres Rivera v. Policía de PR, supra*.

agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[25]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[26] La *evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[27] Debido a la presunción de legalidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[28] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[29] De modo que no podrá basarse únicamente en simple alegaciones. A esto se le conoce como la norma de la *evidencia sustancial*, con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[30] Aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[31]

Por otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[32] Así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Es por ello, que, ante casos

---

[25] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud*, 210 DPR 79 (2022).
[26] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).
[27] *Otero v. Toyota, supra*, pág. 728.
[28] *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019).
[29] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[30] *Pacheco v. Estancias*, 160 DPR 409, 432 (2003).
[31] *Íd.*
[32] *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[33]

En resumen, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[34] Por el contrario, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[35] Del mismo modo, el Prof. Echevarría Vargas ha puntualizado que las decisiones de las agencias gubernamentales no deben ser "revocadas o modificadas salvo que conste una actuación arbitraria, ilegal o irrazonable".[36]

### - B - *RECONSIDERACIÓN*

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), en su sección 3.15, advierte que una parte adversamente afectada por una resolución u orden parcial o final podrá presentar una moción de reconsideración, dentro de un término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden.[37]

Nuestro Tribunal Supremo ha decidido que el término para presentar la moción de reconsideración y para notificarle ésta a las demás partes es de cumplimiento estricto. [38] Asimismo, manifestó que la moción de reconsideración debe ser notificada a las demás partes dentro del término que establece la LPAU. De esta manera, la presentación de la moción de reconsideración y su correspondiente notificación a las partes involucradas debe hacerse dentro de ese término de veinte (20) días, o de lo contrario, se

---

[33] *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002 (2011).

[34] *García Reyes v. Cruz Auto Corp., supra*, pág. 893.

[35] *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo, supra*.

[36] Echevarría Vargas, J. A., *Derecho Administrativo Puertorriqueño,* 5ta. ed. Rev., San Juan, Ed. Situm, 2023, pág. 340.

[37] La Sección 3.15 también dispone que: La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. 3 LPRA § 9655.

[38] *Febles v. Romar*, 159 DPR 714, 721 (2003)

entenderá que el término para acudir en *revisión judicial* no se habrá interrumpido.[39]

De otra parte, la Sección 4.2 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) articula que una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la entidad o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de *revisión judicial* ante el Tribunal de Apelaciones. Ello dentro de un período de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de la LPAU. Lo anterior, cuando el término para solicitar la *revisión judicial* haya sido interrumpido **mediante la presentación oportuna de una moción de reconsideración**.[40] (énfasis nuestro). Este término de treinta (30) días para instar la solicitud de revisión ante el Tribunal de Apelaciones, es jurisdiccional, lo que implica que una vez transcurrido, el Tribunal de Apelaciones pierde jurisdicción para atender el recurso.[41]

### - C – *Reglamento Núm. 7160 - Reglamento para la Industria del Gas Licuado de Petróleo, Gas Natural y Otros Productos Peligrosos Conducidos por Tuberías*

La Ley Núm. 109 de 28 de junio de 1962, conocida como la *Ley de Servicio Público de Puerto Rico* (Ley Núm. 109), creó la Comisión de Servicio Público (CSP) como "resultado de la imperiosa necesidad social de reglamentar y fiscalizar de cerca las operaciones de las compañías de servicio público".[42] Entre los poderes y deberes que posee la CSP, se encuentra la facultad de otorgar toda autorización de carácter público para cuyo otorgamiento no se haya fijado otro procedimiento de ley, incluyendo reglamentar las compañías de servicio público y empresas de gas.[43]

---

[39] 3 LPRA § 9655.
[40] 3 LPRA § 9672.
[41] Regla 57. 4 LPRA Ap. XXII-B, R. 57.
[42] *Viajes Gallardo v. Clavell*, 131 DPR 275, 284 (1992).
[43] Véase Arts. 2 (c) y (o), y 14 (a) de la Ley Núm. 109. 27 LPRA § 1002(c) y (o), y 1101(a).

A tales efectos, la CSP promulgó el Reglamento Núm. 7160 de 6 de junio de 2006, intitulado *Reglamento para la Industria del Gas Licuado de Petróleo, Gas Natural y Otros Productos Peligrosos Conducidos por Tuberías* (Reglamento Núm. 7160). El Reglamento Núm. 7160 decreta que la CSP es el organismo facultado para reglamentar y fiscalizar las empresas que se desempeñan en la industria del gas licuado de petróleo, gas natural o cualquier otro producto peligroso transportado por tubería, en sus diversos niveles operacionales.[44]

El propósito del Reglamento Núm. 7160 es atemperar sus disposiciones a los cambios que han surgido en la industria del gas, integrándolas para reglamentar el gas natural y la conducción de los materiales peligrosos conducidos por tuberías.[45] De igual manera, se regula la concesión de las autorizaciones y licencias a las empresas de gas licuado en Puerto Rico y sus operadores.[46]

En lo pertinente, la Sección III codifica la instalación de cilindros, válvulas y accesorios en instalaciones residenciales, comerciales e industriales. En específico, la sección III (A) (7) concierta lo siguiente:

> **Sección III. Instalación de Cilindros, Válvulas y Accesorios en Instalaciones residenciales, comerciales e industriales**.
>   A.  Instalación de Cilindros
>       7. La descarga de los dispositivos de seguridad de los cilindros se localizarán de acuerdo al capítulo sobre "Instalación de sistemas de gas licuado de petróleo" en el panfleto núm. 58 del NFPA".

Por su lado, el Artículo 14 del Reglamento Núm. 7160 implanta:

> Las disposiciones de este Reglamento prevalecerán y se complementarán con las disposiciones de cualquier otro Reglamento de la Comisión de Servicio Público en vigor que sea de aplicación.

> En caso de duda sobre cualquier materia cubierta o no por este Reglamento se acudirá de manera supletoria a la Ley de Servicio Público, a los reglamentos y normas federales, además de los estándares que rigen esta industria (49 CFR §191, 192, 193 y 195, NFPA, API, NGPA, CGA, ASME, ASTM, NACE, UL, ANSI).
> [...]

---

[44] *Introducción* del Reglamento Núm. 7160.
[45] Art. 3, Reglamento Núm. 7160.
[46] Art. 4, Reglamento Núm. 7160.

**- D –** *REGLAMENTO NÚM. 9358 – CÓDIGO DE REGLAMENTOS DEL NEGOCIADO DE TRANSPORTE Y OTROS SERVICIOS PÚBLICOS*

El *Negociado de Transporte y otros Servicios Públicos* (NTSP), entidad adscrita a la Junta Reglamentadora de Servicios Públicos conforme la Ley Núm. 211 de 12 de agosto de 2018 (Ley Núm. 211), conocida como la *Ley de Ejecución del Plan de Reorganización de la Junta Reglamentadora de Servicio Público de Puerto Rico* adoptó el Reglamento Núm. 9358 intitulado *Código de Reglamentos del Negociado de Transporte y Otros Servicios Públicos*, el cual precisa como propósito erigir los criterios que han de seguirse para autorizar, reglamentar y fiscalizar las empresas de servicio público, el Transporte Comercial y las personas bajo la jurisdicción del Negociado [...] así como garantizar que los procedimientos administrativos se efectúen de manera rápida, justa y económica, asegurando la solución equitativa de los casos.[47]

Relativo a la controversia ante nuestra consideración, el Reglamento Núm. 9358 preceptúa lo siguiente:

**Capítulo II, Sección 2.01**:

**Abogado del Interés Público.** Funcionario asignado a la Oficina de Abogados del Interés Público para implementar los deberes y obligaciones ministeriales del Negociado. Una de sus funciones es iniciar los procedimientos administrativos contra las personas que presuntamente han cometido infracciones a la Ley de Servicio Público de Puerto Rico, *supra*, y a los reglamentos aprobados en virtud de ésta.

**- III –**

El señor **PANDOLFI DE RINALDIS** apuntala que el **NTSP** incidió: (i) al determinar que las partes habían estipulado las medidas tomadas el día 29 de febrero de 2024 y no ver la vista evidenciaria; (ii) al interpretar sus leyes y reglamentos de tal forma que declaró ha lugar la *Querella* del señor **PELLOT RODRÍGUEZ**; y (iii) al no conceder la solicitud de reconsideración en vista de los argumentos y declaraciones juradas sobre presiones indebidas en el caso.

Con relación al primer error, afirmó que aun cuando la *Resolución y Orden* recurrida menciona que las partes estipularon las medidas tomadas

---

[47] Tomo 1, Capítulo I, Sección 1.02 y 1.03.

por el inspector durante la vista ocular, no hubo tal acuerdo. Sustentó que, al no existir evidencia sustancial en el expediente administrativo sobre la estipulación de las medidas, procedía celebrar una audiencia en la cual testificaran los inspectores de **NTSP**. Por eso, este foro revisor debe revocar la decisión final de **NTSP**.

Por su parte, el señor **PELLOT RODRÍGUEZ** indica que, en la vista ocular celebrada el 29 de febrero de 2024, el inspector Colón Berdecía tomó las medidas en presencia de los demás inspectores, el señor ÁNGEL CRESPO (perito del señor **PELLOT RODRÍGUEZ**), la **OAIP** y las representaciones legales de ambas partes. Además, subrayó que, el señor **PANDOLFI DE RINALDIS** también estuvo presente en la vista ocular, por lo que tuvo la oportunidad de observar cómo fueron tomadas las medidas. Negó que por tratarse de un procedimiento administrativo era requisito celebrar una audiencia para determinar si las medidas fueron correctas. Enfatizó que el señor **PANDOLFI DE RINALDIS** no presentó evidencia ante el **NTSP** ni ante este foro que demostrara la inexactitud de las medidas.

Se desprende de los autos ante nuestra consideración que, si bien el señor **PANDOLFI DE RINALDIS** alegó que el **NTSP** erró al determinar que las partes habían estipulado las medidas tomadas en la vista ocular y, por ello, no celebrar la vista evidenciaría, no nos puso en posición de apartarnos de la deferencia que debemos otorgar a las determinaciones de hechos de la agencia administrativa.

De un análisis del dictamen recurrido surge que el juzgador sopesó el contenido de los cuatro (4) informes que constaban en el expediente y les concedió mayor valor probatorio a los dos (2) últimos rendidos. Ello pues, aquilató, que en los demás informes los inspectores no fundamentaron sus conclusiones conforme era requerido por el reglamento del **NTSP**. En tal caso, un análisis detenido del expediente refleja que, el señor **PANDOLFI DE RINALDIS** no demostró la existencia de prueba adicional que reduzca el valor probatorio de los últimos informes, hasta el punto de que no se pueda

concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.

En el segundo error, el señor **PANDOLFI DE RINALDIS** asevera que incidió el **NTSP** al interpretar sus leyes y reglamentos de tal forma que declaró ha lugar la *Querella*. Detalló que aun cuando, reiteradamente, se señaló que había incurrido en distintas violaciones al Manual Núm. 58 del **NFPA**, este reglamento no constaba en el récord del caso y tampoco había sido adoptado por el **NTSP**. A su vez, avaló que no se le podía sancionar por incumplir con un reglamento que no estaba vigente en el momento en que fue presentada la *Querella*. Propuso que no existía evidencia sustancial en el expediente administrativo que permitiera concluir que cometió dichas violaciones.

Disconforme, el señor **PELLOT RODRÍGUEZ** denota que, conforme al Tribunal Supremo de Puerto Rico, una vez las agencias administrativas promulgan reglamentos para facilitar su proceso decisional, vienen obligadas a cumplir con ellos pues estos operan como límites a su discreción. Por esto, reforzó que el **NTSP** venía obligado, y así lo hizo, a aplicar todos aquellos reglamentos que estuvieran acordes a las funciones que le fueron encomendadas.

Las disposiciones reglamentarias aplicables a la situación de autos están contenidas en el Reglamento 7160 del **NTSP.**[48] En cuanto a lo aquí pertinente, el referido Reglamento apresta que: "[l]a descarga de los dispositivos de seguridad de los cilindros de gas se localizará **de acuerdo al capítulo sobre *Instalación de sistemas de gas licuado de petróleo* en el panfleto núm. 58 del NFPA**".[49] (énfasis nuestro). Además, el Artículo 14 del mismo cuerpo advierte que, en caso de duda sobre cualquiera de las materias allí contenidas, serán aplicables de manera supletoria, otras fuentes de derecho, entre las que se encuentra el **NFPA**.

---

[48] Véase Reglamento Núm. 7160 de 6 de junio de 2006, *Reglamento para la Industria del Gas Licuado de Petróleo, Gas Natural y Otros Productos Peligrosos Conducidos por Tuberías*.
[49] *Íd*, p.45.

Aun cuando el señor PANDOLFI DE RINALDIS objetó que las normas del NFPA no fueron adoptadas por el NTSP y no podían ser aplicadas en la presente controversia, lo cierto es que del propio texto del Reglamento 7160 se desprende expresamente que el capítulo sobre *Instalación de sistemas de gas licuado de petróleo* del NFPA fue adoptado por la NTSP. A la luz de ello, las referidas disposiciones son aplicables a la controversia ante nuestra consideración y estaban vigentes al momento de la instalación del cilindro de gas (2017).

Así las cosas, tras leer detenidamente la determinación final de la agencia recurrida, no observamos que el NTSP incluyera exclusivamente las disposiciones contenidas en el Manual Núm. 58 NFPA. El NTSP hizo referencia a las correspondientes al año 2017. A su vez, es importante destacar que las secciones del Manual de la NFPA son idénticas. Por tanto, somos del criterio de que la agencia no incidió en la interpretación de sus leyes y reglamentos. Por el contrario, el NTSP los interpretó utilizando todas aquellas disposiciones que estaban a su alcance y aplicaban a la situación de autos conforme a lo dispuesto en el Reglamento 7160.

Por último, el señor PANDOLFI DE RINALDIS plantea que erró el NTSP al no conceder la súplica de reconsideración en vista de los razonamientos y declaraciones juradas sobre presiones indebidas en el caso. Razonó que, la agencia debió atender la reconsideración y celebrar una audiencia para dilucidar las alegaciones planteadas en su recurso.

La disposición concerniente a la reconsideración en la LPAU y en el *Código de Reglamentos del Negociado de Transporte y Otros Servicios Públicos* contemplan la posibilidad de que la agencia no actúe sobre el recurso de reconsideración dentro del término de quince (15) días de presentada. No vemos disposición de ley o reglamentaria alguna que obligue al NTSP a atender el recurso de reconsideración pues esta es una facultad discrecional de la agencia. En dicho caso, cuando la parte se encuentre aún inconforme con la determinación de la agencia administrativa corresponde que inste una

revisión de decisión administrativa ante el Tribunal de Apelaciones y, como sabemos, así lo hizo el señor **PANDOLFI DE RINALDIS**.

Luego de un análisis ponderado del expediente ante nuestra consideración, concebimos que la *Resolución y Orden* está sustentada en el trámite administrativo acompañada de una presunción de corrección. No existen fundamentos o motivos que justifiquen nuestra intervención con la discreción administrativa del **NTSP.** Mucho menos, se ha demostrado que el **NTSP** haya actuado de manera arbitraria, irrazonable, ilegal o contrario a derecho. Esto es, el señor **PANDOLFI DE RINALDIS** no presentó ante nuestra consideración prueba suficiente que derrotara la presunción de legalidad y corrección de la determinación de la agencia recurrida. Ante ello, no procede que sustituyamos el criterio administrativo por la nuestra, y atinamos que debemos abstenernos de intervenir con la *Resolución y Orden.* A esos efectos, discernimos que el **NTSP** no incidió en el(los) error(es).

- IV -

Por los fundamentos antes expuestos, ***declaramos no ha lugar*** la *Solicitud de Reconsideración de Resolución Declarando No Ha Lugar la Solicitud de Desestimación Sometida por el Recurrido* presentada el 24 de septiembre de 2024 por el señor **WILLIAM PELLOT RODRÍGUEZ;** y ***confirmamos*** la *Resolución y Orden* promulgada el 22 de mayo de 2024 por el **NEGOCIADO DE TRANSPORTE Y OTROS SERVICIOS PÚBLICOS (NTSP).**[50]

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[50] Véase *Resolución* decretada el 16 de septiembre de 2024.